UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

RUTH D. BENDALL,            )
    Plaintiff,              )
                            )
vs.                         )    3:11-CV-03400-LSC
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security, )
    Defendant.              )

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Ruth D. Bendall ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a bachelor's degree in elementary education. (Tr.

at 40.) Her past work experiences include employment as a teacher and a loan clerk.[1] (*Id.* at 52–53; doc. 8 at 5.) Plaintiff claims that she became disabled on May 1, 2008, due to epilepsy, a ruptured disc, and high blood pressure. (Tr. at 113.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20

---

[1]Plaintiff testified at her oral hearing that she worked in a bank, (tr. at 53), but she did not specify her job title. She specified the job title "loan clerk" in her brief. (Doc. 8 at 5.)

C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Plaintiff meets the nondisability requirements for a period of disability and DIB. (Tr. at 10.) The ALJ further found that Plaintiff was only insured through December 31, 2009, requiring her to establish disability on or before that date. (*Id.*) He also determined

that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.* at 12.) According to the ALJ, Plaintiff's degenerative disk disease of the cervical spine, epilepsy, and hypertension are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.* at 15.) The ALJ did not find Plaintiff's allegations to be totally credible, and he determined that she has the following residual functional capacity: she can perform sedentary work but requires the ability to sit or stand at her discretion; she can sit for two-hour periods across an eight-hour workday; she can stand for one-hour periods across an eight-hour workday; she can occasionally lift up to ten pounds; she can occasionally reach above shoulder level with both upper extremities; she can frequently use her upper and lower extremities to operate hand and foot controls; she can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; she cannot work on ladders, ropes, or scaffolds; she cannot work around dangerous machinery or unprotected heights or perform commercial driving; and she should avoid concentrated exposure to extreme cold, wetness, humidity, and vibrations. (*Id.*)

According to the ALJ, Plaintiff is able to perform her past relevant work as a loan clerk at a bank. (*Id.* at 29.) The ALJ also found that she is a "younger individual," and she "has at least a high school education and is able to communicate in English," as those terms are defined by the regulations. (*Id.*) He determined that "[t]ransferability of job skills is not material to the determination of disability" in this case. (*Id.*) The ALJ found that Plaintiff has the residual functional capacity to perform a reduced range of sedentary work. (*Id.*) Although Plaintiff cannot perform the full range of sedentary work, the ALJ determined that jobs that Plaintiff can perform exist in significant numbers. (*Id.* at 30.) He reached this determination based on the testimony of the Vocational Expert ("VE") about the existence of jobs in the national economy for individuals with Plaintiff's age, education, work experience, and residual functional capacity. (*Id.*) The VE testified that an individual in Plaintiff's position is capable of performing such jobs as assembler of light fixtures, counter attendant, and garment assembler. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 1, 2008, through the date of this decision." (*Id.*)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court

scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Plaintiff alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ's rejection of her treating physician's opinion is unsupported by substantial evidence. (Doc. 8 at 1.) Second, Plaintiff contends that the ALJ's determination that she can return to her past work or other work that exists in substantial numbers is unsupported by substantial evidence. (*Id.*)

A.   Treating Physician's Opinion

Plaintiff contends that the ALJ improperly evaluated her treating physician's May 2009 opinion. (Doc. 8 at 9.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and

treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions, such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences

thereof, not their opinions of the legal consequences of [her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

In May 2009, Dr. Almirol, Plaintiff's treating physician, completed a one-page insurance questionnaire for Principal Life Insurance Company as well as a Physical Residual Functional Capacity Questionnaire. (Tr. at 304, 306-10.) The ALJ gave "great weight" to Dr. Almirol's opinion in these forms that Plaintiff could not climb ladders, but could occasionally twist, stoop, crouch/squat, and climb stairs. (*Id.* at 28, 309.) The ALJ gave "little weight" to the remainder of Dr. Almirol's opinion, explaining his reasons for that determination in detail, as noted below. (*Id.* at 27-28.)

On the insurance questionnaire, Dr. Almirol asserted, *inter alia*, that Plaintiff can occasionally reach at or above shoulder level and frequently reach below shoulder level. (*Id.* at 304.) This assertion is inconsistent with Plaintiff's report to Dr. Clarke Woodfin, a consultative examiner for the Disability Determination Service. Dr. Woodfin examined Plaintiff in October 2008, and at that time she only complained of problems with seizures and her neck, and never complained of limitations with reaching despite her reports of other limitations. (*Id.* at 219, 221.)

On the residual functional capacity questionnaire, Dr. Almirol concluded that Plaintiff's pain is constantly severe enough to interfere with her attention and concentration needed to perform simple work tasks. (*Id.* at 307.) However, this is inconsistent with Plaintiff's testimony during her oral hearing before the ALJ regarding her daily activities, in which she stated that she prepares her own meals, shops for groceries with assistance for lifting heavy items, walks to the mailbox, and goes walking "on pretty days." (*Id.* at 42-43.)

Further, Dr. Almirol stated that Plaintiff can only sit for twenty minutes at a time and less than two hours total in an eight-hour workday and that she can stand for fifteen minutes at a time and less than two hours total in an eight-hour workday. (*Id.* at 307.) This, however, is inconsistent with Plaintiff's testimony that she can sit for "[a] couple of hours maybe" at once and stand for "[m]aybe an hour at one time" without any problem and with Dr. Woodfin's finding in October 2008 that Plaintiff had "no . . . physical limitations regarding sitting, being on her feet, or walking." (*Id.* at 43, 221.)

Similarly, Dr. Almirol's assertion that Plaintiff can "rarely" lift less than ten pounds (*id.* at 308), is inconsistent with Dr. Woodfin's finding that Plaintiff can lift up to ten pounds, (*id.* at 221), and Plaintiff's own report to Dr. Woodfin in October

2008 that she could lift up to fifteen pounds. (*Id.* at 128.) Moreover, Dr. Almirol reported that Plaintiff can "rarely" hold her head in a static position. (*Id.* at 309.) However, Plaintiff never reported difficulty with holding her head in a static position when she saw Dr. Cheng, a neurologist to whom Dr. Almirol referred her for her neck pain in September 2008. (*Id.* at 212–15.) Based on his examination of Plaintiff and review of Plaintiff's June 2008 MRI of her cervical spine, Dr. Cheng opined that Plaintiff does not exhibit evidence of "instability or deformity" that would warrant surgery and recommended that Plaintiff exhaust "conservative management" instead of surgery. (*Id.* at 215.)

Finally, Dr. Almirol asserted that Plaintiff is frequently "incapable" of low stress jobs, frequently "capable" of low stress jobs, and frequently "capable" of high stress work. (*Id.* at 307.) These assessments are contradictory, and the assessment that Plaintiff is frequently capable of high stress work contradicts Dr. Almirol's assessment that Plaintiff's pain is sufficiently severe as to interfere with even simple work tasks. (*Id.*) The doctor offered no explanation for the contradiction in these assessments.

Controlling or substantial weight is predicated on an opinion being consistent with the other medical evidence of record. *See* 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2). The ALJ specifically considered that some of Dr. Almirol's opinion was inconsistent with the evidence from Drs. Cheng and Woodfin, whose opinions support a finding that Plaintiff is capable of performing a wide range of work activities. (Tr. at 27-28, 212-15, 219-21, 304-10.) The evidence does not reveal any change in Plaintiff's condition between the time Dr. Woodfin and Dr. Cheng examined her in September 2008 and Dr. Almirol's May 2009 assessments, and Dr. Almirol provides no objective evidence for the contradictions within his own notes. Thus, the ALJ correctly gave great weight to only part of Dr. Almirol's opinion because the rest of it is contradictory to the other medical evidence of record and to the doctor's own opinion.

For these reasons, the Court finds that the ALJ had good cause to give great weight to only part of Dr. Almirol's assessment of Plaintiff's condition and that this determination is supported by substantial evidence. *See Crawford*, 363 F.3d at 1159–60; *Phillips*, 357 F.3d at 1240–41.

B.  Plaintiff's Ability to Return to Work

Plaintiff asserts that the ALJ's determination that she can return to her past relevant work, or in the alternative, that she can perform jobs that exist in significant numbers in the national economy, is unsupported by substantial evidence. (Doc. 8 at

11.) Specifically, Plaintiff attacks the hypothetical question that the ALJ posed to the VE as not accurately reflecting the RFC finding the ALJ made with respect to Plaintiff. (*Id.* at 10.) Plaintiff asserts that a discrepancy exists because the ALJ did not include the specific term "sedentary work" in his hypothetical question to the VE and because the ALJ did not sufficiently articulate that the sit/stand option was "at her discretion," which is the term he used in his RFC finding. (*Id.*) Plaintiff also argues that the VE's testimony concerning the other jobs that exist in the national economy, i.e., assembler of light fixtures, counter attendant, and garment assembler, is flawed because the VE's testimony is inconsistent with the information in the Dictionary of Occupational Titles ("DOT"), which classifies these jobs as "light" rather than "sedentary." (*Id.* at 10-11.)

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227 (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)). Sedentary work is defined as work that involves lifting no more than ten pounds at a time and requires occasional walking and standing. 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ found that Plaintiff was limited to a reduced range of sedentary work, which is reflected in his hypothetical question, i.e., that the

individual can "occasionally lift up to ten pounds" and "sit for two hour periods . . . [and] stand for one hour periods" in an eight-hour workday. (Tr. at 15, 55-56.) As such, the hypothetical question that the ALJ posed to the VE about work opportunities comprised all of the plaintiff's impairments.

The ALJ also specifically asked the VE to consider that Plaintiff "would need a sit or stand type of job." (Tr. at 55.) The fact that the ALJ did not specifically pose to the VE that the hypothetical individual be able to sit or stand "at her discretion" is irrelevant, especially considering that the VE's testimony reflects consideration of this limitation, as he describes sit and stand jobs as "those allowing the individual to either sit to perform the work or stand to perform the work or sit and stand to perform the work." (Tr. at 58.)

Further, the Eleventh Circuit has held that even if the VE described jobs as sedentary when they are classified by the DOT as light work, such a fact "does not necessarily mean that the VE's testimony was inconsistent with the DOT." *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 (11th Cir. 2011). This is because, although the DOT "provides occupational information on jobs in the national economy," it "is not comprehensive" nor "the sole source of admissible information concerning jobs." *Id.* (quoting *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999)). The DOT provides

descriptions of occupations, not of numerous jobs within those occupations, and the VE "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* (quoting Soc. Sec. Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). In any event, Plaintiff concedes that her past relevant work as a loan clerk is a sedentary job. (Doc. 8 at 10.)

Plaintiff quarrels with the words used by the ALJ in the hypothetical question, but she has not shown that she is unable to perform her past relevant work and the other jobs identified by the VE, which she must do once the Commissioner has demonstrated that there are jobs that she can perform. *See Jones*, 190 F.3d at 1228. Thus, the Court finds that the hypothetical that the ALJ posed to the VE and subsequently relied on was accurate and ultimately that the ALJ's determination that Plaintiff can return to past relevant work or the alternative jobs articulated by the VE is supported by substantial evidence. *See Wilson*, 284 F.3d at 1227.

IV.   Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 28th day of September 2012.

_L. SCOTT COOGLER_
UNITED STATES DISTRICT JUDGE
[160704]